(No. 14708.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PETER SALERNO, Plaintiff in Error.

*Opinion filed February 21, 1923.*

1. CRIMINAL LAW—*when statements made by co-defendant are not competent to prove defendant's guilt.* Where one charged with receiving stolen property is jointly indicted with the thieves on charges of larceny and receiving stolen property, statements made to police officers by his co-defendants out of his presence are admissible to determine the punishment of such co-defendants under their plea of guilty to the larceny but are not competent to prove the guilt of the one charged with receiving the stolen property.

2. SAME—*court should not encourage witnesses to identify accused.* Where self-confessed thieves are not certain in their identification of the person charged with receiving the stolen property it is not the province of the trial court to encourage them to make their identification positive.

3. SAME—*court cannot take cognizance of fact ascertained in another cause.* In a criminal prosecution neither the trial judge nor the Supreme Court can legally take cognizance of any incriminating fact that the trial court has learned during the trial of another cause but which is not in evidence in the case on trial.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

FORREST GARFIELD SMITH, THOMAS R. McCABE, THOMAS E. SWANSON, and CHARLES P. R. MACAULAY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Peter Salerno, plaintiff in error, and Nathan Mankowitz, Edward Bulger and George O'Brien, were indicted in the criminal court of Cook county for the larceny of nine bolts of cloth of the value of $223, the property of Morris Goldsmith & Co., and for receiving said property knowing that it had been stolen. The State elected to not prosecute plaintiff in error for a felony and to prosecute for a misdemeanor only, and the record so shows. Plaintiff in error pleaded not guilty, waived a jury and the trial was before the court. The defendants Mankowitz and O'Brien pleaded guilty and the State used them as witnesses against plaintiff in error, and the court heard the evidence for the purpose of determining their punishment and for the purpose of the trial of plaintiff in error. The defendant Bulger did not appear at the trial. The court found plaintiff in error guilty of receiving stolen property

of the value of $15 and sentenced him to the house of cor-
rection of the city of Chicago for one year and to pay a
fine of $500 and costs. The judgment was affirmed by
the Appellate Court.

The evidence showed that Mankowitz, an employee of
Morris Goldsmith & Co., a corporation, on May 30, 1920,
went into the company's place of business after business
hours, with Bulger and O'Brien, the latter a teamster, and
stole some woolen goods out of the building and carried
them away in an automobile. They drove about for an
hour or two and stopped at Taylor street and Blue Island
avenue. O'Brien got out there to watch and Bulger and
Mankowitz drove to a garage in the rear of a butcher shop
at 922 South Morgan street and unloaded the woolens.
They then carried the woolens into the butcher shop on an
automobile cushion and sold them to a man there. The
price was paid to Bulger, which is not certainly made known.
He gave Mankowitz $137 and O'Brien $137.50 in divi-
sion of the spoils. Officer Walsh testified that Mankowitz
made a statement the following day in which he said that
in Salerno's place they got $505, and that there was a
money order cashed for $13. The secretary of the com-
pany testified that it lost seven pieces of woolens, contain-
ing about 350 yards of the market value of about $5 per
yard. The butcher shop belonged, up to 1917, to plaintiff
in error, but in that year he sold it to his brother, Dominick,
who owned the shop from thence to the day of the theft,
and the sign above the door read, "D. A. Salerno." The
record also shows that there is a very striking resemblance
between plaintiff in error and his brother, and that his
brother was previously convicted of a similar offense be-
fore the same judge that tried plaintiff in error.

The only other evidence that tended to prove that plain-
tiff in error received the stolen property was the testimony
of Mankowitz, which is in substance the following: He
knew the defendant in May, 1919. He saw him first when

Bulger (one of the defendants) took him over to the shop. It was about two hours after the goods were taken. He never saw him before that. Bulger got the machine. He said it was Salerno's. They drove over on Morgan street and went into the garage there. It was in the back of a store where Salerno owned a butcher shop. They unloaded the goods and Bulger got the money. He did not see Salerno at the time they were unloading the goods. He believed Salerno was inside but he did not see him. Bulger and he walked into the butcher shop and he saw him in there. He walked out when Salerno was giving Bulger the money. He did not see the money and did not remember how much he got. At this point in his testimony the court addressed the witness in this language, "You will have a good lot of time to think about that, Mankowitz. I want the whole story now, that is all. Where was O'Brien?" The witness continued thus: "O'Brien was outside in the machine [in answer to the judge's question.] I got the money and Bulger got the money order, I believe, from Salerno, and he went into the saloon to cash them. I was standing on the corner." He was asked whether or not Salerno went into the saloon at any time while O'Brien was in there, and the court then made this statement: "If this boy does not connect Salerno, all right. He can have plenty of time to think about that. I am not going to ask him to implicate Salerno. He does not seem to be able to think." To these remarks defendant objected. His counsel then directed the witness to tell the court what happened at the garage when he got the goods there, and the court at once asked the witness this question: "Do you know the defendant, Peter Salerno?" The witness answered, "Yes," and then continued his evidence thus: "I have not known him very long. We brought the goods inside the butcher shop on the cushion of the automobile. Peter Salerno was there. I did not talk to him. Bulger did the talking to

him. He paid Bulger the money. I was in there and I walked out."

O'Brien in his testimony stated positively that he did not know Peter Salerno very well; that he made the statement in Hoyne's office that he saw Salerno, because he was afraid of getting "beat up;" that in that office they kept repeating to him, "You know Salerno, don't you? You know Salerno?" and he thought the best way to get out of it was to tell them that he did know Salerno, because they were threatening him and talking rough talk to him. He finally stated positively that he could not honestly say that he saw Peter Salerno on the day of the theft.

Plaintiff in error testified in his own behalf that he worked at his brother's butcher shop and that his brother's name is Dominick; that he worked Saturdays and holidays, and that on Saturdays he worked at 2201 West Harrison street, where his brother had another place. The court at this point in the testimony remarked, apparently to the witness: "All right. I have a rather long memory. You know what I have reference to. Mr. Williams knows." The witness, continuing, testified that the first time he ever saw Mankowitz was after the trouble, when Mankowitz was with officer Walsh at 1922 Morgan street; that he had not seen him prior to June, 1919; that he met O'Brien in the same way, and never heard of Bulger except in the court room. He did not know how Mankowitz happened to bring the police over to the place where he worked, and that he never saw the goods that were stolen. The court at this point said to the witness: "You were under arrest before me. You had another case before me. Yes, you remember it. You remember when your brother, Dominick, told Charlie Williams that it was you that had received some other stolen property." The witness protested and said that he was not arrested, and the court replied, "He [Dominick] said it was Peter and Mr. Williams said it was Peter." The witness undertook to reply to the court,

but the court cut him off with this further statement: "From what these boys tell, it was very strange between you and Dominick whether it was you or Dominick. That is the proposition. I said I had a long memory. His brother was found guilty and Charlie Williams [Dominick's attorney] came in and said it was not him,—it was his brother. Now, here is the difficulty of the other being accused. This place has been before my court,—this very place. You happen to be unfortunate in the selection of a judge. I mean by reason of the experience of the court." The court then finally turned to Mankowitz and asked him if he knew Dominick Salerno, and the witness replied that he did not know him. He then asked the witness if Peter Salerno was the man, and the witness again replied that he was the man, and that he knew that it was Peter because that was what Bulger told him.

The court seemed to be doubtful of Mankowitz's identification of Peter Salerno as the party to whom the stolen goods were sold, and he stated to the attorneys that he was going to see if the witness would identify Peter or his brother as the guilty man, and stated that Peter looked somewhat like his brother. The court then had Dominick brought into court, and on confronting Mankowitz with both the brothers the court asked him, "What is your identification?" and the witness answered, "I don't know, sir. There was one by the name of Peter Salerno." The witness was asked the further question which of the two men would he pick out or identify, and the witness replied, "If I were convinced I would pick him out." He was then asked, "Who is the man?" and the answer was, "I don't know." The witness further answered that he saw the money pass between Bulger and the party who gave it to him, and on being further questioned as to whether or not he knew which one was the guilty man he again answered, "I went to court so many times with these fellows that I don't know." This question was then finally put to him, "You

think it was this man?" and his answer was "Yes," referring to Peter Salerno.

The foregoing is the entire evidence against plaintiff in error, and it is given substantially as it occurs in the abstract, and it is interpreted in its most favorable light to the State. There was some other evidence in the record of statements made to the officers by Mankowitz and O'Brien which was objected to by plaintiff in error, and the court overruled the objection on the ground that it was competent on the question of the guilt of the other two defendants who had pleaded guilty. That evidence was not competent to prove plaintiff in error's guilt. His guilt must be determined solely upon the competent evidence in the record, and before he could be legally convicted it was incumbent upon the State to prove beyond all reasonable doubt that he was guilty of receiving stolen property of the corporation knowing it to be stolen. The record does not show that he ever dealt before with any of the parties who are shown to have stolen the goods. The evidence does not show that the guilty defendants, or anyone connected with them, ever stole any property before and sold it to either one of the Salernos. Neither the trial judge nor this court can legally take cognizance of any fact that the trial judge had learned in the trial of any other cause. We are satisfied from the showing in the record that the statements of the trial judge to and in the presence of Mankowitz had considerable bearing on the testimony of the witness, and tended to make his testimony much more certain and positive against plaintiff in error than it otherwise would have been. But taking the evidence as it appears in the record we regard it as insufficient to establish the guilt of plaintiff in error, and that he ought not to have been convicted upon this testimony.

The judgment and sentence of the court are reversed and the cause is remanded.          *Reversed and remanded.*